JUDGE GARDEPHE

14 CV 2671

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

DONALD TRICE and OLIVER TRICE,

Plaintiff,

-against-

THE CITY OF NEW YORK, DETECTIVE ALEXANDROS KALOGIROS, and JOHN/JANE DOE #1 - 10,

Defendants.

---

COMPLAINT

JURY TRIAL DEMANDED

RECEIVED
APR 15 2014
U.S.D.C. S.D. N.Y.
CASHIERS

## NATURE OF THE ACTION

1. This is an action to recover money damages arising out of the violation of Plaintiffs' rights under the Constitution of the United States.

## JURISDICTION AND VENUE

2. This action is brought pursuant to 42 U.S.C. §§ 1983 and 1988, and the Fourth, Fifth, and Fourteenth Amendments to the Constitution of the United States.

3. The jurisdiction of this Court is predicated upon 28 U.S.C. §§ 1331, 1343, and 1367(a).

4. Venue is proper in this district pursuant to 28 U.S.C. §§ 1391 (b) and (c).

## JURY DEMAND

5. Plaintiffs demand a trial by jury in this action.

## PARTIES

6. Plaintiff Donald Trice ("Donald") is a resident of the County of Bronx, State of New York.

7. Plaintiff Oliver Trice ("Oliver") is a resident of the County of Bronx, State of New York.

8. Defendant The City of New York is a municipal organization organized under the laws of the State of New York.

9. Defendant The City of New York operates the New York City Police Department ("NYPD"), a department or agency of Defendant The City of New York.

10. The NYPD is responsible for the appointment, training, supervision, promotion, and discipline of police officers and supervisory police officers, including the individually named defendants herein.

11. At all times relevant herein, Defendant Detective Alexandros Kalogiros ("Kalogiros") was an officer, employee, and agent of Defendant The City of New York.

12. At all times relevant herein, Defendant Kalogiros was acting within the scope of his employment with Defendant The City of New York.

13. At all times relevant herein, Defendant Kalogiros was acting under color of state law.

14. Defendant Kalogiros is sued in his individual and official capacities.

15. At all times relevant herein, Defendants John/Jane Doe # 1 - 10 were supervisors, officers, employees, and/or agents of Defendant The City of New York.

16. At all times relevant herein, Defendants John/Jane Doe # 1 - 10 were acting within the scope of their employment with Defendant The City of New York.

17. At all times relevant herein, Defendants John/Jane Doe # 1 - 10 were acting under color of state law.

18. Defendants John/Jane Doe # 1 - 10 are sued in their individual and official capacities.

19. The names John/Jane Doe # 1 - 10 are fictitious, their true names being unknown to Plaintiff at this time.

**STATEMENT OF FACTS**

20. On July 13, 2012, Donald and Oliver were lawfully present at 940 St. Nicholas Avenue, Apt. 1D, New York, New York 10032 ("Subject Location").

21. Oliver and Donald were at the Subject Location with their mother and another individual by the name of David Joseph.

22. Oliver and Donald were watching television.

23. At that time, the individual defendants broke in the door to the Subject Location and entered the apartment, ordering all four occupants to the ground.

24. Oliver and Donald were searched and removed from the apartment.

25. No contraband was found on or near Oliver or Donald.

26. The individual defendants searched the apartment and Mr. Joseph.

27. The individual defendants exited the apartment and told Oliver and Donald that they were being placed under arrest.

28. Oliver and Donald demanded to know why, but the officers refused to tell them why.

29. Oliver's and Donald's arrests were approved by John/Jane Doe # 10, a supervisor present at the Subject Location.

30. Their arrests were without probable cause.

31. Oliver and Donald were handcuffed and transported to a police precinct by the individual defendants.

32. Upon entering the precinct, Oliver and Donald were subject to degrading and humiliating body cavity and strip searches.

33. No contraband was on Oliver's or Donald's persons, and they had given the individual defendants no reasonable suspicion and/or probable cause to conduct the strip searches and body cavity searches.

34. At the precinct, Oliver and Donald learned that they were being arrested for allegedly possessing vials and pipes containing cocaine residue.

35. Oliver and Donald knew that the Subject Location contained no illegal contraband.

36. Upon information and belief, the alleged illegal contraband was either found on the person of David Joseph, or was placed there by the individual defendants in order to ensure a positive result under the arrest warrant, a practice known as "flaking".

37. The alleged contraband was not in close proximity to either Oliver or Donald.

38. No circumstances within the Subject Location indicated that the apartment was being used as a drug factory and the alleged contraband was not in plain view.

39. Despite this, all of the adults inside of the home were arrested, except for Plaintiffs' mother, who left at the Subject Premises because the individual defendants did not want to deal with her medical needs.

40. The individual defendants spoke with the New York County District Attorneys' Office, individually and collectively lying to the New York County District Attorney's Office that Donald and Oliver violated New York Penal Law § 220.03.

41. Based on these fabricated allegations, the New York County District Attorney's Office forwarded to Defendant Kalogiros a Criminal Court Complaint.

42. The Criminal Court Complaint was reviewed and then signed by Defendant Kalogiros.

43. When reviewing and signing the Criminal Court Complaint, Defendant Kalogiros knew the allegations contained therein to be false.

44. The executed Criminal Court Complaint was then forwarded by Defendant Kalogiros to the New York County District Attorney's Office.

45. Legal process was issued against Donald and Oliver, and they were subsequently arraigned.

46. During the pendency of the criminal proceeding, the individual defendants forwarded false evidence to the New York County District Attorney's Office, *inter alia*, arrest reports, complaint reports, Criminal Court Complaint, and property vouchers.

47. Donald and Oliver suffered damage as a result of Defendants' actions. Donald and Oliver were deprived of liberty and suffered emotional distress, physical injury, mental anguish, fear, pain, anxiety, embarrassment, humiliation, and damage to reputation.

## FIRST CAUSE OF ACTION
### *42 U.S.C. § 1983*

48. Donald and Oliver repeat and reallege each and every allegation as if fully set forth herein.

49. Defendants, by their conduct toward Donald and Oliver as alleged herein, violated Plaintiffs' rights guaranteed by 42 U.S.C. § 1983, the Fourth, Fifth, and Fourteenth Amendments to the Constitution of the United States.

50. As a direct and proximate result of this unlawful conduct, Donald and Oliver sustained the damages herein alleged.

## SECOND CAUSE OF ACTION
***Unlawful Stop and Search***

51. Donald and Oliver repeat and reallege each and every allegation as if fully set forth herein.

52. The individual defendants violated the Fourth and Fourteenth Amendments because they stopped and searched Donald and Oliver without reasonable suspicion.

53. As a direct and proximate result of this unlawful conduct, Donald and Oliver sustained the damages herein alleged.

## THIRD CAUSE OF ACTION
***False Arrest***

54. Donald and Oliver repeat and reallege each and every allegation as if fully set forth herein.

55. The individual defendants violated the Fourth and Fourteenth Amendments because they arrested Donald and Oliver without probable cause.

56. As a direct and proximate result of this unlawful conduct, Donald and Oliver sustained the damages herein alleged.

## FOURTH CAUSE OF ACTION
***Denial of Substantive Due Process***

57. Donald and Oliver repeat and reallege each and every allegation as if fully set forth herein.

58. The individual defendants created false evidence against Donald and Oliver.

59. The individual defendants forwarded false evidence to prosecutors in the New York County District Attorney's Office.

60. In creating false evidence against Donald and Oliver, and in forwarding false evidence to prosecutors, the individual defendants violated Plaintiffs' right to substantive due process under the Due Process Clause of the Fifth and Fourteenth Amendments of the Constitution of the United States.

61. As a direct and proximate result of this unlawful conduct, Donald and Oliver sustained the damages herein alleged.

## FIFTH CAUSE OF ACTION
***Malicious Abuse of Process***

62. Donald and Oliver repeat and reallege each and every allegation as if fully set forth herein.

63. The individual defendants issued and/or caused to be issued legal process to place Donald and Oliver under arrest.

64. The individual defendants arrested Plaintiffs in order to obtain collateral objectives outside the legitimate ends of the legal process, to wit, to cover up their unlawful stop and search of Donald and Oliver.

65. The individual defendants pursued these collateral objectives after issuance of legal process by, *inter alia*, forwarding false evidence to the New York County District Attorney's Office and continuing to participate in the prosecution of Donald and Oliver.

66. The individual defendants acted with intent to do harm to Donald and Oliver without excuse or justification.

67. As a direct and proximate result of this unlawful conduct, Donald and Oliver sustained the damages herein alleged.

**SIXTH CAUSE OF ACTION**
***Malicious Prosecution***

68. Oliver and Donald repeat and reallege each and every allegation as if fully set forth herein.

69. The individual defendants initiated the criminal proceedings against Donald and Oliver by issuing and/or causing to be issued legal process against Donald and Oliver.

70. The individual defendants lacked probable cause to commence the criminal proceedings against Donald and Oliver.

71. The individual defendants' actions were motivated by actual malice.

72. The criminal proceedings were terminated in favor of Donald and Oliver.

73. As a direct and proximate result of this unlawful conduct, Donald and Oliver sustained the damages herein alleged.

**SEVENTH CAUSE OF ACTION**
***Failure to Intervene***

74. Oliver and Donald repeat and reallege each and every allegation as if fully set forth herein.

75. Those defendants that were present but did not actively participate in the aforementioned unlawful conduct observed such conduct; had an opportunity to prevent such conduct; had a duty to intervene and prevent such conduct; and failed to intervene.

76. Accordingly, the defendants who failed to intervene violated the Fourth, Fifth, and Fourteenth Amendments of the Constitution of the United States.

77. As a direct and proximate result of this unlawful conduct, Oliver and Donald sustained the damages herein alleged.

**EIGHTH CAUSE OF ACTION**
***Monell***

78. Oliver and Donald repeat and reallege each and every allegation as if fully set forth herein.

79. This is not an isolated incident. Defendant The City of New York, through its policies, customs, and practices, directly caused the constitutional violations suffered by Plaintiffs.

80. Defendant The City of New York, through the NYPD, has had, and still has, hiring practices that it knows will lead to the hiring of police officers lacking the intellectual capacity and moral fortitude to discharge their duties in accordance with the Constitution of the United States and is indifferent to the consequences.

81. This is not an isolated incident, and this practice of arresting every adult within a home after the execution of a search warrant was evident during, among other occurrences, the November 19, 2010, search warrant execution at 395 Vermont Street, Brooklyn, New York for which a lawsuit was filed in the United Stated District Court, Eastern District of New York under Index Number 13 CV 765 (BMC); the May 4, 2012, search warrant execution at 300 East 138th

Street, Apartment 9C, Bronx, New York; and the December 15, 2010, search warrant execution at 1348 Webster Avenue, Apartment 7G, Bronx, New York for which a lawsuit was filed in the United Stated District Court, Southern District of New York under Index Number 12 Civ. 5289 (PAC).

82. Defendant The City of New York is aware of these practices, having launched internal investigations into the matter, but has failed to discontinue the practice of arresting every adult inside a home after alleged contraband is found despite said adults not being in proximity, constructive possession, or actual possession of the alleged contraband.

83. Defendant The City of New York, through the NYPD, has a *de facto* quota policy that encourages unlawful stops, unlawful searches, false arrests, the fabrication of evidence, and perjury.

84. This quota policy requires that police officers, including the individual defendants named herein, make a certain number of arrests and/or write a certain number of summonses and desk appearance tickets within an allocated time period.

85. Officers that meet the required number of arrests, summonses, and desk appearance tickets are classified as active officers.

86. Officers that do not meet the required number of arrests, summonses, and desk appearance tickets are classified as inactive officers.

87. Active officers are given promotion opportunities that are not afforded to inactive officers.

88. Active officers are given overtime opportunities, such as security at parades, etc., that are not afforded to inactive officers.

89. The quota policy does not differentiate between arrests, summonses, and desk appearance that are supported by probable cause and ones that are not.

90. Defendant The City of New York, through the NYPD, does nothing to ensure that officers, in trying to fulfill this quota policy, are making arrests and issuing summonses and desk appearance tickets lawfully. There are no post-arrest investigations that are performed, and no policies in place that would prevent abuse of this policy, such as is demonstrated in the instant case.

91. Defendant The City of New York, through the NYPD, does nothing to determine the outcome of the charges levied against arrestees in order to proper counsel officers as to the lawfulness of their arrests/issuance of summonses and desk appearance tickets.

92. The failure of Defendant The City of New York to, *inter alia*, take these steps encourages, *inter alia*, unlawful stops, unlawful searches, false arrests, the fabrication of evidence, and perjury, in that the quota policy provides, *inter alia*, career and monetary incentives to officers, including the individual defendants herein.

93. Defendant The City of New York, through the NYPD, has a *de facto* overtime policy that encourages and incentivizes unlawful stops, unlawful searches, false arrests, the fabrication of evidence, and perjury.

94. Defendant The City of New York, through the NYPD, provides officers, including the individual defendants herein, with overtime opportunities when arrest are made, or summonses and desk appearance tickets are issued.

95. Upon making an arrest or issuing summons or desk appearance ticket, an arresting officer submits a request for overtime to his commanding officer.

96. These requests are essentially rubberstamped, with commanding officers performing no investigation into the circumstances of the arrest.

97. Defendant The City of New York, through the NYPD, does not perform any post-arrest investigation and there are no policies in place to prevent abuse of this overtime policy.

98. As a result of this overtime policy, officers, including the individual officers named herein, abuse this overtime policy, making baseless arrests and wrongfully issuing summonses and desk appearance tickets to substantially supplement their income through overtime pay.

99. The aforementioned quota and overtime policies are further exacerbated by rampant flaking within the NYPD.

100. As noted above, flaking is the practice by narcotics officers of planting drugs on or near targeted and innocent individuals, and then doctoring NYPD and legal paperwork to ensure that the charges stick.

101. This practice of flaking is used to ensure that quota and productivity goals are met by NYPD officers so that they may enjoy, among other things, financial and promotional opportunities within the NYPD.

102. This practice is widespread within the NYPD. So much so that, at the trial of Jason Arbeeny, an NYPD veteran convicted of flaking in order to meet quotas, Supreme Court Justice Gustin Reichbach stated, “"Having been a judge for 20 years, I thought I was not naïve regarding the reality of narcotics enforcement. But even the Court was shocked, not only by the seeming pervasive scope of the misconduct, but even more distressingly by the seeming casualness by which such conduct is employed.”

103. Defendant The City of New York, at all relevant times, was aware that the individual defendants routinely committed constitutional violations such as those at issue here and has failed to change its policies, practices, and customs to stop this behavior.

104. Defendant The City of New York, at all relevant times, was aware that the individual defendants are unfit officers who have previously committed the acts alleged herein and/or have a propensity for unconstitutional conduct.

105. These policies, practices, and customs were the moving force behind Oliver's and Donald's injuries.

## PRAYER FOR RELIEF

**WHEREFORE**, Oliver Trice and Donald Trice respectfully request judgment against Defendants as follows:

(a) Compensatory damages against all defendants, jointly and severally;

(b) Punitive damages against the individual defendants, jointly and severally;

(c) Reasonable attorney's fees and costs pursuant to 28 U.S.C. § 1988; and

(d) Such other and further relief as this Court deems just and proper.

Dated: New York, New York
April 14, 2014

Gregory P. Mouton, Jr., Esq.
The Law Office of Gregory P. Mouton, Jr.
Attorney for Plaintiffs
244 5th Avenue, Suite G247
New York, NY
Phone & Fax: (646) 706-7481
greg@moutonlawnyc.com